J-S06002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| In the Interest of: R.R.L.F. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appeal of: K.E., Mother | No. 1443 MDA 2015 |

Appeal from the Decree entered July 24, 2015
in the Court of Common Pleas of York County
Orphans' Court at No(s): 2014-0155

BEFORE:  PANELLA, J., MUNDY, J., and STEVENS[*], P.J.E.

MEMORANDUM BY PANELLA, J.               **FILED MARCH 21, 2016**

K.E. ("Mother") appeals from the Decree entered on July 24, 2015, in the Court of Common Pleas of York County, which involuntarily terminated her parental rights to her minor daughter, R.R.L.F. ("Child"), born in April 2013. We affirm.

The trial court summarized the relevant facts and procedural history as follows. The York County Office of Children, Youth, and Families ("CYF") has been involved with Mother since 1990. On April 29, 2013, CYF filed an application for emergency protective custody. In the application, it was alleged that, at the time of Child's birth, Mother tested positive for methamphetamines. Mother also admitted that she used marijuana and

_____

[*] Former Justice specially assigned to the Superior Court.

alcohol through the pregnancy. Mother and Father were residing together at the time, and their residence was not appropriate due to environmental concerns. There were also allegations of domestic violence between Mother and Father. In a shelter care order, the trial court found that CYF presented sufficient evidence to prove that a return of Child to the home of Mother and Father was not in the Child's best interest. Legal custody was awarded to CYF, and physical custody was awarded to emergency caretakers.

CYF filed a dependency petition on May 17, 2013, and, on the same date, CYF also filed a motion for finding of aggravated circumstances relating to Mother. In an order, the trial court determined that clear and convincing evidence was presented concerning the existence of aggravated circumstances. No efforts were made to preserve the family and reunify the Child with Mother.

The trial court adjudicated Child dependent. The court awarded legal custody to CYF and physical custody to the emergency caretakers. The goal of return to the parent or guardian was also established. At the time of the termination of parental rights hearing held on March 31, 2015, the Child had been dependent for twenty-two months.

On September 12, 2013, CYF filed a motion for modification of placement. On September 16, 2013, the trial court entered an order in which the legal custody was transferred to Father and I.E. In addition, physical custody of Child was awarded to I.E. Father was to be given partial

physical custody of Child. However, at no time, was Father permitted to allow contact between Mother and the Child. Mother was permitted to have supervised visitation, with supervision by CYF or another approved supervisor.

In a permanency review order, the trial court found that there had been substantial compliance with the permanency plan by Father and moderate compliance with the plan by Mother. CYF made reasonable efforts to finalize the permanency plan. Mother was permitted to have supervised visitation with the Child, and the Child was to remain under the protective supervision of CYF.

CYF filed a Motion for modification of placement on October 4, 2013. That same day the trial court entered an order in which it was determined that it was in the best interests of the Child to be removed from the home of Father and I.E. Legal and physical custody were awarded to CYF, and the Child was placed in foster care. On October 7, 2013, the trial court entered an order in which evidence was presented to prove that the continuation or return of Child to Mother and Father was not in her best interest. Legal and physical custody was awarded to CYF and the Child was placed in foster care.

In a permanency review order, the trial court determined that there had been moderate compliance with the permanency plan by Mother and

Father, but there continued to be a need for placement of the Child outside the care and custody of Mother and Father.

In a subsequent permanency review order the trial court found that there had been minimal compliance with the permanency plan. There continued to be a need for placement of the Child outside the care of Mother and Father.

Again, in a permanency review order dated February 18, 2015, the trial court found that there was minimal compliance by Father and no compliance by Mother. There continued to be a need for placement of Child outside the care and custody of Mother and Father. CYF identified a pre-adoptive resource for Child. Child is developmentally on target, and she has no special needs. Proper notice of the change of goal/termination Hearing was given to both Mother and Father on February 19, 2015.

Five family service plans were prepared for Mother. The dates of the plans were May 26, 2013, November 26, 2013, March 28, 2014, August 26, 2014, and February 18, 2015.

CYF filed a petition for involuntary termination of parental rights and a petition for hearing to change court ordered goal on November 7, 2014. A hearing was held on March 31, 2015, June 6, 2015, and July 10, 2015. In a final decree entered on July 24, 2015, the trial court granted CYF's Petition for involuntary termination of Mother's parental rights as to Child. This timely appeal followed.

Mother raises one issue on appeal.

> Did the [trial court] abuse its discretion and err as a matter of law in terminating Mother's parental rights when CYF failed to meet its burden [of proving] that termination of parental rights is in the best interests of the child when the parental rights of one parent is terminated and the parental rights of the other parent is not terminated?

Mother's Brief at 4.

Initially, we review the termination decree according to the following standard.

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights.As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> As we [have] discussed …, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents.  Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012) (citations omitted).

Section 2511 of the Adoption Act governs the termination of parental rights and requires a bifurcated analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S.A. § 2511). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

The trial court terminated Mother's parental rights under section 2511(a)(2), (5), (8), and (b). We will focus on section 2511(a)(1) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(1)     The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

After review of the record and the testimony presented at the hearings, the trial court found that CYF has proven by clear and convincing evidence that Mother has failed to perform any parental duties for Child. At the time of the trial court's decision, Mother was incarcerated at York County Prison. Prior to Mother's incarceration, CYF did not know where Mother was residing. Since the adjudication of dependency, Mother has changed residences a number of times and has failed to keep CYF informed of her

whereabouts. In addition, Mother had not had a visit with Child since September 2014.

Testimony at the hearing established that Mother would sometimes bring toys and clothes to her visits, but that Mother never inquired about Child and never performed significant parental duties for Child. Mother has mental health and drug issues for which she has not yet received treatment. In addition, Mother has not been able to maintain stable and safe housing, nor a lawful source of income. Therefore, the trial court had sufficient, competent evidence before it that clearly and convincingly correctly established that the termination of Mother's parental rights is justified pursuant to Section 2511(a)(1) of the Adoption Act.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Child has no bond with Mother. The termination of Mother's parental rights will have no immediate effect on Child. The trial court found that the termination of Mother's parental rights of Child would best meet the needs of Child and permit Child to achieve the stability that she deserves.

The trial court also had before it competent evidence to support a finding that Child has a strong emotional bond with her foster parents, with whom she has been living for the last twenty-two months, and who take care of all of her needs. The trial court found that there is no evidence that Child would be adversely affected if her relationship with Mother were severed.

The competent evidence in the record shows Mother failed to "exhibit [the] bilateral relationship which emanates from the parent['s] willingness to learn appropriate parenting…." *In re K.K.R.S.*, 958 A.2d 529, 534 (Pa. Super. 2008). She did not put herself in a position to assume daily parenting responsibilities so that she could develop a real bond with the Child. *See In re J.L.C.*, 837 A.2d 1247, 1249 (Pa. Super. 2003).

A parent's feelings of love and affection for a child, alone, will not preclude termination of parental rights. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). A child's life "simply cannot be put on hold in the hope that [she] will summon the ability to handle the responsibilities of parenting." *In Re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (citation omitted). Rather, "a parent's basic constitutional right to the custody and

rearing of h[er] … child is converted, upon the failure to fulfill h[er] … parental duties, to the child's right to have proper parental care…." ***In Re Z.P.***, 994 A.2d at 1121 (citation omitted).

We find that there was competent evidence to support the trial court's decision that termination of Mother's parental rights best serves the Child's developmental, physical, and emotional needs and welfare.

We affirm the trial court's decree terminating Mother's parental rights to Child pursuant to section 2511(a)(1) and (b).

Decree affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/21/2016